IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SCHNEIDER ELEC. BLDGS.** | * | |
| **CRITICAL SYSTEMS, INC.,** | * | |
| Petitioner | * | |
| v. | * | CIVIL NO. JKB-14-1890 |
|  | * | |
| **WESTERN SURETY CO.,** | * | |
| Respondent | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Pending before the Court is the petition of Schneider Electric Buildings Critical Systems, Inc. ("Schneider"), to compel Respondent Western Surety Company ("Western") to engage in binding arbitration. (ECF No. 1.) Also pending is Western's motion for leave to file surreply. (ECF No 13.) The Court has considered the various filings of the parties (ECF Nos. 8, 12, 13, 14, 15, and 16) and finds no hearing is necessary, Local Rule 105.6 (D. Md. 2014). The motion for leave to file surreply will be granted, and the petition will be dismissed.

*I. Background*

As recounted in the petition, the United States Army Corps of Engineers entered into a contract on August 14, 2009, with Clark Construction Group, LLC ("Clark"), "to build the USAMRICD facility" (the "Project") at Aberdeen Proving Ground in Maryland. (Pet. ¶ 15.) On October 30, 2009, Clark entered into a subcontract with Schneider "to perform building critical systems controls work on the Project" ("Schneider Subcontract"). (*Id.* ¶ 16.) On May 25, 2010, Schneider entered into a subcontract with National Control Services, Inc. ("NCS"), "to provide

some of the labor and materials for Schneider's work on the Project" ("NCS Subcontract"). (¶¶ 1, 17.)

The contract documents in the NCS Subcontract included the "Subcontract," "Attachment 1: Scope of Work," the "Contractor's Contract" (referring to the Schneider Subcontract), the "Master Subcontract Agreement" between Schneider and NCS, and other documents not at issue in this case. (Pet. Ex. 1, Ex. 2.) Under the Subcontract (¶ 4), NCS was required to furnish a performance bond for 100% of the Subcontract value, which was $2,050,000. (*Id.* Ex. 1.) NCS arranged with Western for the Performance Bond. (*Id.* Ex. 3.) In the first paragraph of the Performance Bond, it states:

> The Contractor [NCS] and the Surety [Western], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Schneider] for the performance of the Construction Contract [NCS Subcontract], which is incorporated herein by reference.

The Performance Bond also provided in part,

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first.

(*Id.* ¶ 9.)

The petition indicates that on August 30, 2013, NCS stopped working on the Project; at that point, approximately 70% of the NCS Subcontract had been performed. (Pet. ¶ 2.) At the same time, NCS claimed entitlement "to payment of approximately $50,000 for an August 2013 requisition and that it was entitled to additional payments of approximately $360,000 for claims and changes." (*Id.* ¶ 3.) Schneider did not agree that NCS was due to receive those payments. (*Id.*)

Correspondence was exchanged by counsel for Schneider and counsel for NCS, and a conference call was held in September 2013, which also included Western, but Schneider and NCS did not resolve their dispute. (Pet. Ex. 4 – Ex. 6.) Thereafter, on November 12, 2013, Schneider notified NCS and Western of the termination for cause of the NCS Subcontract and demanded Western take remedial action under the Performance Bond. (*Id.* Ex. 7, Ex. 8.) Further correspondence was exchanged in January 2014 between Schneider's counsel and Western's counsel, highlighting their points of disagreement as to whether Western had been relieved of its obligations under the Performance Bond based upon Schneider's actions. (*Id.* Ex. 9.)

On February 18, 2014, Schneider filed with the American Arbitration Association ("AAA") a demand for arbitration, naming NCS as the only respondent. (Resp.'s Opp'n Ex. 1.) On April 10, 2014, Schneider filed an amended demand for arbitration, naming both NCS and Western as respondents. (Pet. Ex. 10.) Schneider has taken the position that Western is subject to the Master Subcontract Agreement's provision requiring Schneider and NCS to arbitrate disputes between them. (Pet. ¶¶ 44-47, 67-69.) Western has refused to arbitrate, contending no arbitration agreement exists between Schneider and Western. (Resp.'s Opp'n 1.)

On April 24, 2014, Western filed a petition in the Circuit Court for Howard County, Maryland, seeking a stay of arbitration and declaratory relief ("State Court Petition"). *Western Surety Company v. Schneider Electric Buildings Critical Systems Inc.*, No. 13C14098703, http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=13C14098703&loc=62&detailLoc=CC (last visited Apr. 10, 2015). *See also* Petition to Stay Arbitration and for Declaratory Judgment. (Pet. Ex. 12.) On the same day, Western filed with the AAA an objection to Schneider's amended demand for arbitration. (Pet. Ex. 11.) Western's State Court Petition was filed pursuant to the Maryland Uniform Arbitration Act ("MUAA"), Md. Code Ann., Cts. & Jud.

Proc. §§ 3-208, 3-406, 3-409 (LexisNexis 2013). Schneider filed a motion to dismiss for improper venue; Western opposed the motion, but consented to a transfer of the case to Harford County Circuit Court. (Resp.'s Opp'n 7 n.3.) The order of transfer was signed July 24, 2014, No. 13C14098703 docket entry 6/0, and the case was transferred on August 6, 2014, Harford County Circuit Court No. 12C14002396 docket entry 1/0. On September 3, Western filed a motion for partial summary judgment. *Id.* docket entry 6/0. Schneider filed its answer to Western's State Court Petition on September 4 and its opposition to Western's motion for partial summary judgment on September 26. *Id.* docket entries 1/1, 6/1. According to Western, Schneider's September 4 answer included a request that the state court compel Western to arbitrate. (Resp.'s Status Report 1, ECF No. 15.) The state court held a hearing October 20 and conducted another motions hearing December 11, taking the matter *sub curia*. No. 12C14002396 docket entries 10/0, 11/0, 12/0. On February 20, 2015, the state court judge ruled no agreement to arbitrate existed between Western and Schneider and granted Western's motion for partial summary judgment as to count I of the State Court Petition. Mem. Op. and Order (Status Report Ex. A, ECF No. 15). The judge specifically ruled, "Western will not be compelled to participate in arbitration regarding the dispute between the parties to this case." Mem. Op. 12.

While the State Court Petition was pending, Schneider filed the instant federal court petition to compel arbitration on June 11, 2014. Western filed its answer on July 11. (ECF No. 8.) In a conference call with counsel, the Court ascertained that the parties did not desire or need discovery and set a date for Schneider to file its reply memorandum, which occurred on August 18. (ECF Nos. 11, 12.) Thereafter, on September 11, Western filed its motion for leave to file a surreply. (ECF No. 13.) Schneider responded on September 24, saying it did not oppose

the motion, but offering further brief argument in response to the proposed surreply. (ECF No. 14.)

## II. *Analysis*

Although Western did not specifically ground its opposition to Schneider's petition on the issue of abstention, it did indicate that this case might be susceptible to dismissal under the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See* Resp.'s Opp'n 19 n.5. After reviewing the applicable case law, the Court is persuaded that this case presents the "exceptional circumstances" that were set forth in *Colorado River* and that justify dismissal.

As was stated by the Fourth Circuit in *Chase Brexton Health Services, Inc. v. Maryland*,

> We begin by recognizing the general rule that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other.

411 F.3d 457, 462 (4th Cir. 2005).

In *Colorado River*, the Court was faced with a first-filed federal action competing with a state court action filed shortly thereafter, with both cases focused upon water rights from certain rivers and their tributaries. The federal case was dismissed because the district judge opined that the doctrine of abstention required deference to the state court proceedings. Concluding that the case fell into none of the known abstention categories, the Supreme Court nevertheless affirmed the dismissal because it was governed by principles resting "on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). Noting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *id.* (citation omitted), and the

nonexistence of important considerations of constitutional adjudication and state-federal relations in the case before it, the Court said,

> the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

424 U.S. at 818. Dismissal pursuant to *Colorado River* "may be considered only when 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983), *quoted in Chase Brexton*, 411 F.3d at 464.

At the outset, it must be determined whether parallel federal and state suits exist. *Chase Brexton*, 411 F.3d at 463. This requirement is strictly construed, such that substantially the same parties are litigating substantially the same issues in different fora. *Id.* at 464. Here, the parties in the state suit and the federal suit are identical. As for the issues, in the State Court Petition Western in count I asked the court to stay arbitration for the reason that it is not a party to an arbitration agreement with Schneider and therefore cannot be required by Schneider to arbitrate any dispute. (State Court Petition, Pet. Ex. 12 at 9-10.) In count II, Western requested declaratory relief as to certain suretyship defenses for the claims asserted by Schneider against the Performance Bond. (*Id.* 10.) In the instant case, Schneider's petition rests upon its assertion that its claim against Western under the Performance Bond is subject to arbitration and that any suretyship defenses must also be determined through arbitration. (Pet. 20-29.) Thus, the issues involved are substantially, if not precisely, identical. The state and federal cases are, therefore, parallel. That was recognized by the parties in the proceedings in state court. Mem. Op. 4.

The Supreme Court in *Moses H. Cone* discussed the factors considered by it in *Colorado River* as well as the case then before it, but cautioned against mechanical application of them.

460 U.S. at 15-16. Even so, the balancing of these factors is "heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. The circumstances are considered at the time the federal district court makes its decision. *See Moses H. Cone*, 460 U.S. at 940 (noting circumstances "at the time of the decision to stay"); *Chase Brexton*, 411 F.3d at 466 (same).

The six recognized factors are the following:

(1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others;

(2) whether the federal forum is an inconvenient one;

(3) the desirability of avoiding piecemeal litigation;

(4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;

(5) whether state law or federal law provides the rule of decision on the merits; and

(6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* at 463-64.

The first and second factors have no bearing on the analysis under *Colorado River*. No *res* exists upon which *in rem* jurisdiction can be based, and the state and federal courts are both within the Baltimore metropolitan area so neither can be considered "inconvenient." The third factor weighs in favor of dismissal inasmuch as the state proceeding not only sought a ruling upon the key issue before this Court—whether Western can be compelled to arbitrate with Schneider—but also sought judicial determination of the merits of its suretyship defenses, which

are before this Court only in an oblique way, *i.e.*, whether they, too, must be arbitrated. A ruling by this Court adverse to Schneider would not resolve that additional issue still pending before the state court.

One of the most important factors in analyzing the instant case is the fourth: the relevant order in which the courts obtained jurisdiction and the progress achieved in each action. The state court case was filed roughly a month and a half before the federal suit, and the state court judge has rendered summary judgment on the very issue Schneider asks this Court to decide. The fourth factor weighs heavily in favor of dismissal. The fifth factor focuses on whether federal or state law provides the rule of decision. Even assuming that federal law applies here, the Court notes that the question of arbitrability is addressed similarly under federal and Maryland law. As the state judge noted in the Memorandum Opinion, the Maryland appellate courts "have noted that the MUAA and the FAA [Federal Arbitration Act] were adopted to achieve the same goals and both the MUAA and the FAA reflect legislative policies in favor of enforcing arbitration agreements." Mem. Op. 5-6. Thus, the analyses under state and federal law in this case are made from similar perspectives, and this factor tends toward neutrality. The Court cannot find any basis for finding the state proceeding to be inadequate to protect the parties' rights, which is the sixth factor. Schneider argues "one can easily imagine" that the state court does not often apply both federal and state law "on a regular basis" and, further, asserts it "desires a federal court to preside over th[e] adjudication" of its claimed rights under the FAA. These statements are a weak basis, at best, for regarding the Maryland courts as inadequate to protect the parties' rights. The sixth factor weighs in favor of dismissal.

On balance, the Court concludes this case fits well within the principle espoused in *Colorado River*: "considerations of 'wise judicial administration, giving regard to conservation

of judicial resources and comprehensive disposition of litigation" resulting in the conclusion that dismissal of the federal petition is appropriate. A separate order will reflect the rulings made here.

DATED this 14th day of April, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge